Thursday, April 28. The judges delivered their opinions.
Judge Tucker.
The appellees filed their bill, stating that John Hunt, being possessed of several slaves and other property, made his will December 28th, 1760, whereby he devised to his sisters Mary Anne Dillard, and Elizabeth Upshazv, (the appellant,) all his negroes after the death of his mother Anne Upshazv, who was also mother of the appellees. That William Upshaw the husband of Elizabeth, the legatee, on the 17th of January * 1761, made his will, whereby he gave to his wife his whole estate real and personal during her widowhood, and after her decease to the heirs of James Upshaw, equally to be divided amongst them: and by a codicil dated in June, 1761, he devised u the negroes in the possession of Mrs. Anne Upshaw, that li were given to his wife by her brother John Huntf il his part he desired might be equally divided among “ his uncle Forest Upshaw's three children, at their “ mother’s decease.” The appellees are those children — - and Elizabeth Upshazv having taken possession of the estate of her husband William, and enjoyed it more than twenty years, on the death of her mother Anne Upshaw, possessed herself of a moiety of the slaves, devised to her by her brother J. Hunt; to recover which is the object of the bill. The appellant admits the wills of J. Hunt and William Upshaw; but contends the latter had no right to bequeath the slaves in question; he having died in the life of Anne Upshazv, who held them as her dower. And that she was obliged to pay, together with James Dillard,, her sister’s husband, the sum of 77l. 16s. 4d. 1-2 towards the discharge of John Hunt’s debts for which those slaves were liable and advertised by the administrator to be sold: which she sup *388 poses to have been their full value at that time, as the;^ were then under the incumbrance of her mother’s dower estate: and, therefore, hopes she may be considered as a purchaser, J. Hunt having nq other estate left for payment of his debts ; but in any event that she may be considered, as having a lien in the slaves for the money so paid with interest.
The Chancellor decreed the slaves with their profits to the appellees, upon payment by them to the appellant of one half those debts of f. Hunt with which these slaves were chargeable. The defendant appealed.
The doctrine of elections seems to have been' fully considered by Mr. Powell,- in his- treatise on devises. Therein' he lays down the following principles, ofi the authority of Lord Ch. J. Talbot, in the case of Streatfield v. Streatfield.(a) “ When a man takes upon him to devise what he u has nú fotver over, upon the supposition that his will# “ will be acquiesced under,- the Court of Chancery will “ compel the devisee to take entirely,. but not partially u under it,- there being á tacit condition annexed to all “ devises of this nature, that the devisee do not disturb the tc disposition that the devisor has- made.”
To the same effect are the remarks of Lord Ch. J. Dd Grey, in his judgment in Pulteney v. Lord Darlington ;(b) “ A man may by a mean, and indirectly, give what is not “ his own, either by express condition, or equity arising “ upon an implied condition.” And to the same effect is Whistler v. Webster.(c)
And the rule equally applies, says Powel,. whether the benefit under the will be immediate or consequential; for' though the effect in such cases is, that the devise operates as a satisfaction for the previous interest of the devisee,yet the principles by which satisfactions strictly speaking, are governed, do riot apply to cases of this kind; therefore, it is not necessary that the .thing devised should be of the same nature, or of adequate value, with the thing in lieu ol" which it is to be received, (d)
And Lord Talbot, where the will comprised both real arid personal estate, and the land, to which one child was’ *389 entitled in tail, was thereby given to another, and a personal legacy to the tenant in tail, went so far as to infer an intent, that whoever took by that will should comply with the whole, and put the party to an election of the estate tail, or the personal legacy.(a)
To these rules there are some exceptions, or rather qualifications, as if the devisee be a creditor, and not a volunteer, and some others, (b)
But (it is said) no case upon this rule has yet gone so far as to establish the proposition that, if a devisor in his will takes upon himself to dispose of an estate in which he has no interest, but which is absolutely another’s, and, in the same will, gives a beneficial thing to the owner of such estate, the owner of the estate shall either waive the benefit of the devise, or renounce his estate: the foundation of the rule being a supposed misconception of the testator as to the situation of his own property.(c) And this observation Was particularly relied on by the appellant’s counsel.
True it is, William Upshaw, by his codicil, gave the appellees what he had no power to bequeath ; his wife’s interest in the dower slaves held by her mother being merely a reversionary interest, which, in the event of her surviving’ her husband, without his disposing thereof in his life-time, or reducing the slaves into possession, would survive tS her. But it is clear from the words of the codicil, that he thought the slaves were his oxvn, and that he had a-power to bequeath them by his will. This was clearly a misconception of his right in respect to them. For, though he might have sold his wife’s reversionary right, it being a vested interest, yet, if he neglected to do so, he could not dispose of it by xuill, but it Would survive to her. The case of Dade v. Alexander,(d) I conceive, does not affect this principle ; for the husband’s right was in that case decided to be absolute, in case he survived the wife; but here she was the survivor.
But, in order to put a devisee to the alternative of either waiving his own interest under a will, or foregoing his claim to some interest disposed of therein, to which he is previously *390 entitled independent of the will, it must be clearly evinced that the devisee’s taking both will defeat the general intent of the devisor, (a)
In the present case it was manifestly the testator’s intention to limit his bounty to his wife to the period of her widowhood, or perhaps her life, after which he bequeáths the estate before given to her, (or rather, to use his own words, lent to her,) for life, at most, to the childrenof James Upshaw. Whether he was at that time apprised of the bequest of his wife in John Hunt's will, does not appear; but the codicil manifests an intention to make some provision for his uncle Forest Upshaw's children, the appellees ; and he has done it in such a way, as to compel .the appellant to elect either to forego the use of his property, so long as she continued a widow, or to renounce the benefit of the reversion, whenever it should happen. The devise to her being of the use of his whole estate during her life, gives great weight, I think, to this construction. In the ease of. Whistler v. Webster,(b) it is held “ drat a clear “ knowledge of the funds, being requisite to election, no “ person shall be bound to elect without such previous know-* “ ledge.” Many other cases(1) may be cited to the same effect: and the rule appears to me to be so reasonable, just,- and consonant' with every principle of equity, that I think it ought tó be adopted. In the present case, the compromise between the appellee and the remainder-men may be considered as some evidence of such knowledge; and the nature of that compromise is such that it would seem that, in making it, she had determined her election. Otherwise, I should have inclined to think she could not have been considered as concluded of her election, until the death of Anne Upshaw put it in her power to ascertain the *391 amount and value, both of the property and estate bequeathed TO her, and of that bequeathed from her, by her husband’s will. But talcing all the particular circumstances of the case together, I am of opinion that the decree be affirmed, as to this particular point. But I think the Chancellor ought to have allowed interest upon the money paid to prevent the sale of the negroes by Hunt's executor. In that respect I think the decree erroneous; but I concur in the decree which has been agreed to in conference.
Judge Roane.
If the case of Cull v. Showell, (Ambler, 728.) relied upon by one of the appellant’s counsel, had never been overruled, or departed from, he might have had more cause to be “ sanguine” upon the strength of it, than he has at present. The ground of decision in that case (which was decided in 1772) has, however, been expressly overruled in the cases of Whistler v. Webster, (in 1794,)(a) of Wilson v. Townsend, (in 1795)(b) of Blake v. Bunbury, (in 1792)(c) and perhaps in other cases. In those decisions it is considered as the settled doctrine of a Court of Equity that no man shall disappoint the will under which he claims; and that, therefore, if aman bequeaths to another, property to which he has no title, but which belongs to a third person, to whom he gives by the same will other parts of his estate, such third person must elect and convey his property to the devisee, or he cannot take the property devised to him under the will: that the only question is, did the testator intend (clearly upon the face of the will) the property to go in such a manner? and that the Court will not ask whether he had power to do so : that it is immaterial whether the testator thought he had the right, or, knowing the extent of his authority, under the influence of this principle, intended, by an arbitrary exertion of power, to exceed it: that the legatee, in such case, cannot dispute the ozvnership of the property bequeathed to the other: and that the legatee can only take the pror perty on the terms on zvhich it zvas given.
*392 These doctrines are full up to, and even go beyond the case before us: I say go beyond it, because the testator not only considered the negroes in question as his own, having bequeathed them by the terms “ my part of the negroes “ given to my wife by her brother John liuntf but also because, although the property in those negroes was not then absolutely vested in him, yet from the unsettled state of the law at that time upon this subject,(a) he might naturally have concluded the law in this respect to- be otherwise. It is not equitable that, when property is given to another upon a consideration, the property should be exacted, and yet the consideration withheld.
It is not necessary ip this case to inquire into the extent o'f the rule that a party electing must have a clear knowledge of the situation and amount of the fund elected. In this case the compromise, made with the devisees-over, of the estate derived to the appellant under her husband’s will, not only disabled her from electing the other interest; (she having thereby conveyed the absolute interest in part thereof to such devisees, and herself acquired the absolute interest in the residue;) but was made after so great a lapse of time, that she must have had a clear and undoubted knowledge of the value apd actual situation of both the interests.
On the merits, therefore, the case is clear for the appellees. I concur, however, that the decree be corrected sq as to allow the appellant interest upon the money paid by her to redeem the negroes in question,
Judge Fleming.
It is admitted by all parties that the testator, William Upshaw, had no right to, or vested interest in, the negroes bequeathed to the appellees ; but that,' under the will of John Hunt, the right was in the appellant upon the death of her mother Anne Upshaw. The most material point in the cause then is, whether the appellant, to. whom her husband lent the whole of his estate during her widowhood, should be . put to her election, either to take under the will, and relinquish her right to the negroes, *393 ftr to renounce all claim under the will, and take the negroes bequeathed to the appellees, which she claimed under the will of John Hunt ?
The case of Cud and wife v. Showed and others, in Ambler, 727. seems in favour of her not being putto her election; but later cases, as Whistler v. Webster,(a) and others that have been cited, have overruled that case, with some exceptions, and qualifications; and it seems now settled? that where the devisee is instructed, and hath a clear knowledge of the amount or value of the estate claimed under the will, the election must be made; but, othenvise, the legatee shall not be put to an election:
In the present case it seems that the appellant must, of necessity, have been so instructed and informed; because the whole of the estate was devised and bequeathed to her, during her widowhood 5 and she was appointed the executrix of her husband’s will; and that she, after having remained in possession of the estate, more than twenty years, made a contract with the legatees in remainder, whereby she gave up to them a part of the estate, in consi - deration of their conveying to her an absolute right to the residue: which affords the strongest evidence of her having already made her election with full notice and informations of the value of the estate she took under the will of her husband»
But it appears clearly to nie that she ought to have been Allowed interest on the money she'paid to redeem the negroes chargeable with the debts of John Hunti and that, in, the account to be taken of the profits of the slaves that came into her possession on the death of Anne Upshaw, a just and reasonable allowance ought to be made her, for the support and maintenance of the aged, the children, and others that were unprofitable, (if there be any such among them,) and for other incidental expenses which she may have incurred on their account; as I have been taught by experience, that the maintenance .of a parcel of negroes, *394 where a considerable proportion of them are breeding ■m>rnerb is rather expensive than profitable.
I am therefore of opinion that the decree is in those respects erroneous, and ought to be reversed.
The opinion of the Court was, “ That there was no error l< in so much of the decree of the Superior Court of Chan- “ eery as decides that according to the principles of equity “ the appellant cannot retain both the slaves bequeathed to “ her by the will of her brother John Hunt, on the decease “ of his mother Anne Upshaw, who held the same for her “ life in right of dower, and the property devised and ct bequeathed to her by her husband William Upshaw, by ££ whom those slaves- at the death of the said Anne Upshaw, “ were bequeathed to the appellees; and as directs the said “ slaves, with their progeny, to be delivered to the said “ appellees, with an account of their service and the profits-a arising therefrom ; and as requiresthe appellees to recom- £,£ pense the appellant for the monies paid by her in dis- •“ charge of the debts of fohn Hunt, with the payment of which those slaves were chargeable: but that there is ££ error in the said decree in not allowing to the appellant “ interest upon the monies so paid'by her. And this Court u is further of opinion that a just and reasonable allowance should be made to the said appellant for the support <£ and maintenance of such of the said slaves as are, or may i£ have been aged, infirm, children, or otherwise expensive “ or unprofitable to the holder; as also for such taxes, 5£ doctor’s bills, and other reasonable expenses paid or in- ££ curred by the appellant on account of those slaves, as “ she shall be. able to prove-: Therefore it is decreed and “ ordered, that so much of the said decree as is contrary to “ the above opinion be reversed and annulled, and that the-a residue thereof be affirmed,” &c. .

 Cases temp. Talbot, 176.

 Cited 2 Fonb. 325. Note l.

 2 Ves. jun. 371.

 Powel on Devises, 450.

 Powel, on Devises, 453. who refers to 2 Vern. 14. 617. and 2 Vern. 553.

 Powel, ib. 454. 458, 459 463.

 Powel, ib. 465.

 1 Wash. 30.

 Powel, on Devises, 466.

 2 Ves. jun. 371. 2 Fonb, 326. note l.

 Wake v. Wake, 1 Ves. jun. 385. Newman v. Newman, 1 Bro. Ch. Rep. 187. Boynton v. Boynton, ib. 445. Gibbons v. Count, 4 Ves. jun. 849. Hindes v. Rose, 3 P. Wms. 125. Purcy v. Debouvrie, ib, 316. 5 Ves., jun. 484.

 2 Ves. jun. 370.

 Ib. 696.

 4 Bro. Ch. Rep. 25.

 See Wallace v. Taiaferro, 2 Call, 447.

 3 Ves. jun. 367.